RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0294p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

DONALD RAY MIDDLEBROOKS,

*Petitioner-Appellant,*

*v.*

WAYNE CARPENTER, Warden,

*Respondent-Appellee.*

No. 14-6061

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:03-cv-00814—William J. Haynes, Jr., District Judge.

Decided and Filed:  December 19, 2016

Before:  MOORE, CLAY, and WHITE, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Paul R. Bottei, Gretchen L. Swift, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant.  Jennifer L. Smith, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

─────────────────

## OPINION

─────────────────

KAREN NELSON MOORE, Circuit Judge.  Petitioner-Appellant Donald Middlebrooks appeals from the district court's denial of his petition for a writ of habeas corpus.  Middlebrooks was convicted in Tennessee state court for the 1987 kidnapping and murder of Kerrick Majors, a fourteen-year-old African American.  A jury sentenced Middlebrooks to death.  This is Middlebrooks's second appeal from the denial of his habeas claims.  In 2010, we affirmed the

district court's first dismissal of Middlebrooks's petition; the Supreme Court vacated our decision, however, in light of the Court's holding in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). On remand, the district court concluded that Middlebrooks was not entitled to relief under *Martinez* and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). For the reasons discussed below, we **AFFIRM** the district court's judgment denying Middlebrooks's habeas petition.

## I. BACKGROUND

The Tennessee Supreme Court summarized the evidence presented during Middlebrooks's capital trial as follows:

> [O]n the evening of Sunday, April 26, 1987, around 7:00 p.m., the victim, Kerrick Majors, a 14-year-old black male, was with four friends on Gallatin Road in East Nashville, Tennessee, when they saw a table with a "lot of stuff" being set up across the street as a flea market by three homeless street persons: the defendant, Donald Middlebrooks (a 24-year-old white male); his wife, 17-year-old Tammy Middlebrooks; and their companion, 16-year-old Roger Brewington. The five boys ran across Gallatin Road and were looking at the flea market when Tammy Middlebrooks called out, "Hey, leave our stuff alone!" The boys started running. The defendant and Brewington chased them until they caught Majors. Brewington grabbed Majors in a "sleeper hold" around his neck and head. The defendant held his hand. When Majors said, "Hey man, you know me," Brewington responded, "Shut up, you nigger." Shannon Stewart and another of the boys, Tony Watson, saw the two men drag Majors toward the table and observed the defendant strike him in the face, knocking him to the ground. Frightened, the boys took off running. Later that evening, they reported these events to the victim's mother, who called the police.
>
> The next afternoon, Kerrick Majors' nude body was discovered lying face up in a dry creek bed under a foam mattress in a heavily wooded area behind a drugstore on Gallatin Road in the area where the defendant and Brewington had caught Majors. A bloodstained T-shirt was tied around his neck. A red rope belt was tied around Majors' left wrist, and there was a two-inch laceration in his right wrist. Abrasions, swelling, and bruising were present on the victim's head, his left eye, his nose, his lips, and inside his mouth. An "X" with a vertical line running through it had been cut into his chest. The forensic pathologist, Dr. Charles Harlan, testified that these incisions had been made while Majors was alive. There were two deep stab wounds in the center of the body. One of these penetrated the left lung and pulmonary artery and caused the victim to bleed to death over a period of ten to thirty minutes, during part of which Majors was conscious. Investigating officers noticed a smell of urine about the face, and there were bruises and skinned areas on the back. A wooden stick with blood stains on one end was found lying close to the victim's head.

Around 1:10 a.m. on April 28, police investigators met Brewington at a doughnut shop several miles from the Gallatin Road area. Brewington directed the officers to the location of a knife with a brass knuckle handle, which was bloodstained. Dr. Harlan testified that this knife could have inflicted the deep stab wounds on the victim's body. Brewington also directed the police to a wooded area between Gallatin Road and Ellington Parkway in Nashville where, around 7:00 a.m. on April 28, Donald and Tammy Middlebrooks were apprehended at a small plywood shack. The defendant, who resisted the arresting officers, had a knife with him. He was arrested with the aid of police dogs, taken to the hospital for treatment of the dog bites, and later transported to police headquarters.

At 12:30 p.m. that day, the defendant gave a lengthy video-taped statement about his involvement in the death of Kerrick Majors. The defendant admitted participating in the beating and mistreatment of Majors, but described his role as minor and depicted Roger Brewington as the primary perpetrator of the offense. After Majors was caught, Middlebrooks said Brewington suggested they "have some fun," and the three of them took Majors back into the woods. His hands were tied. Brewington slapped him, beat him with the knife's brass knuckles, hit him with a stick, and urinated into his mouth. The defendant admitted striking Majors with his open hand and on the leg with a switch. Defendant said that his wife Tammy had slapped Majors and burned Majors' nose with a cigarette lighter as Brewington urged her on. Brewington hit Majors on his testicles, threatened to cut "it" open, stuck a stick up Majors' anus, hit him some more with the brass knuckles, wiped the victim's blood on himself, beat his mouth and tongue with a stick, dropped the knife on him, gagged him, and slashed his wrist. Finally, when the defendant asked Brewington to stop because the victim's crying and pleading were getting on his nerves, Brewington gave the victim "the kiss of death" on the forehead. Brewington then gave the defendant the knife and told him to stab Majors. When the defendant refused, Brewington stabbed Majors. The defendant then reluctantly stabbed the victim, according to him, "to prove to Roger that I guess I was cooler" and to put Majors out of his misery. In a previous statement, however, the defendant had said that he had stabbed Majors twice. The victim's ordeal began at 7:30 p.m. and ended at 11:00 p.m. that night with the stabbing.

The next day, the defendant said he and Brewington went back to where they had left the body. Brewington kicked it and made the "X" lacerations at this time. The defendant said he then covered Majors with a foam mattress. The defendant admitted that before beating and killing Majors, he and Brewington had drunk alcohol and smoked marijuana.

The defendant presented no proof.

*State v. Middlebrooks*, 840 S.W.2d 317, 323–25 (Tenn. 1992).

As we explained in our prior opinion, "[o]n the basis of this evidence, the jury convicted Middlebrooks of felony murder and aggravated kidnapping but acquitted him of first-degree premeditated murder, armed robbery, and aggravated sexual battery." *Middlebrooks v. Bell*, 619 F.3d 526, 532 (6th Cir. 2010), *cert. granted, vacated sub nom. Middlebrooks v. Colson*, 132 S. Ct. 1791 (2012). The jury sentenced Middlebrooks to death. *Middlebrooks*, 619 F.3d at 532. "[T]he jury found two aggravating circumstances—that the murder was especially heinous, atrocious, and cruel in that it involved torture or depravity of mind, and that it was committed while Middlebrooks perpetrated a felony." *Id.*

The Tennessee Supreme Court upheld Middlebrooks's convictions on direct appeal but vacated Middlebrooks's death sentence, finding that the second aggravating circumstance "duplicated the offense of felony murder and therefore failed to narrow the class of death-eligible defendants under Article I, § 16 of the Tennessee Constitution." *State v. Middlebrooks*, 995 S.W.2d 550, 552–53 (Tenn. 1999); *see also State v. Middlebrooks*, 840 S.W.2d at 323.

The Tennessee Supreme Court remanded the case for a second sentencing proceeding, and the following evidence was presented:

> According to the State's proof, fourteen-year-old Majors was small for his age. He was described as a good student who loved school. He was not a violent person, nor did he carry a weapon. Since his murder, his mother's health has deteriorated. She has been on medication and will not leave the house except for doctor appointments. She has had a nervous breakdown, suffers from panic attacks, and has not been able to sleep at night since the murder. Majors' older brother blames himself for Majors' death and now suffers from mood swings. Shannon Stewart testified that he had spoken with Middlebrooks the morning of the murder. Middlebrooks had told Stewart that he was a member of the KKK, that he "hated niggers," and that he punched a black man just for saying hello. Stewart also testified that he overheard Middlebrooks order Majors to "shut up nigger."

> The defense introduced mitigation evidence as follows: Middlebrooks' cousins, James and Carol Sue Little, and his half-sister, Sharon Fuchs, testified about Middlebrooks' childhood. Middlebrooks grew up in Texas. His father died when he was four. His mother remarried and had another child, Ms. Fuchs, before she again divorced. Middlebrooks' mother either left the children at night with relatives or else would take them to bars with her.

According to the proof, Middlebrooks' mother would often bring men to the house, and the children sometimes heard or saw their mother having sex. Ms. Fuchs testified that sometimes these men would molest her while her mother watched. She further testified that she, Middlebrooks, and other children in the family were molested by different family members. For example, Middlebrooks was often left alone with a male relative who had sexually abused him, and Middlebrooks' mother would grab him between his legs and also watch him use the bathroom. According to Sharon Fuchs, the small town in which they grew up lacked counseling services or social service agencies where they could seek help for sexual abuse. According to her, no one in the family ever discussed or admitted the family's problems.

The proof further indicated that Middlebrooks was often angry and got into trouble. He was sent to a Methodist Home for Children in Waco for two years. Later, he was twice sent to prison. Between prison stays, Middlebrooks started to have seizures. On one occasion he climbed a water tower and threatened to commit suicide. He was hospitalized more than once at a mental institution.

A psychologist, Dr. Jeffrey L. Smalldon, performed neuropsychological and psychological evaluations of Middlebrooks. From these evaluations, interviews, testing, and prior education and medical records, Smalldon concluded that Middlebrooks has a severe borderline personality disorder. Middlebrooks exhibited several characteristics of the disorder including inconsistent behavior, instability of mood, a marked identity disturbance, impulsive and reckless behavior, poor anger control, and recurring suicidal or self-destructive acts. Smalldon testified that the documents from other mental health professionals who have evaluated Middlebrooks indicate that he suffers from substance abuse, psychotic personality disorder, and schizophrenia. Middlebrooks also suffers a mild degree of organic brain impairment which causes him to be more impulsive and less able to delay his responses. Finally, Smalldon testified that Middlebrooks has also exhibited characteristics of adults who were sexually abused as children.

During cross-examination, Dr. Smalldon admitted that Middlebrooks confessed to a greater involvement in Majors' death than he had in the video-taped confession. For instance, Smalldon disclosed that Middlebrooks admitted to him that it was his idea to hold Majors for ransom, that he helped tie Majors up, and that he urinated on Majors. In an attempt to resolve the discrepancies between the video-taped confession to the police and the confession made to him in the interview, Smalldon explained that Middlebrooks is a chronic liar. Dr. Smalldon conceded that Middlebrooks had never expressed any remorse to him. Smalldon agreed that there were some indications in the medical records of Middlebrooks' malingering, but testified that these indications were not inconsistent with mental illness.

In rebuttal, the State introduced the testimony of two experts indicating that Middlebrooks was exaggerating his mental illness symptoms, that he was competent to stand trial, that he did not have a defense of insanity, and that he was not committable. One expert testified that he could not say whether Middlebrooks was mentally ill. The other expert testified that he made no finding of mental illness and did not consider a personality disorder to be a mental illness.

*State v. Middlebrooks*, 995 S.W.2d at 554–56. Following the presentation of this evidence, the jury found "that the murder was 'especially heinous, atrocious, or cruel in that it involved torture or depravity of mind,'" and that this "outweighed the evidence of mitigating factors." *Id.* at 556 (quoting Tenn. Code Ann. § 39-2-203(i)(5)). Middlebrooks was resentenced to death, and this sentence was affirmed on direct appeal by the Tennessee Supreme Court. *See id.* at 553.

Middlebrooks filed a petition for postconviction relief in state court in November 1999. Appellee App. at 1. Middlebrooks raised several grounds for relief in his petition, including numerous arguments that he received ineffective assistance of counsel. *See id.* at 8–9. After an evidentiary hearing, the state court dismissed Middlebrooks's petition in July 2001. *Id.* at 47. Middlebrooks appealed, and the Tennessee Court of Criminal Appeals affirmed. *Middlebrooks v. State*, No. M2001-01865-CCA-R3-PD, 2003 WL 61244, at *13 (Tenn. Ct. Crim. App. Jan. 9, 2003).

Middlebrooks filed a petition for habeas corpus in federal district court in 2003, and amended his petition in 2004. *See* Appellant App. at 168. The district court denied relief on May 26, 2005, finding that many of Middlebrooks's claims were procedurally defaulted and others were non-meritorious. *See id.* at 206–83. The district court denied a Certificate of Appealability ("COA") for all of Middlebrooks's claims. *Id.* at 283; *see also Middlebrooks v. Bell*, No. 3:03-0814, 2007 WL 760441 (M.D. Tenn. Mar. 8, 2007). We granted a COA on seven issues, and ultimately affirmed the district court's denial of Middlebrooks's habeas petition. *Middlebrooks v. Bell*, 619 F.3d at 536–44.

On March 26, 2012, the United States Supreme Court granted certiorari, vacated our judgment, and remanded the case for further consideration in light of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). *See Middlebrooks v. Colson*, 132 S. Ct. 1791 (Mem.) (2012). We remanded to the district court, and the district court requested additional briefing. Middlebrooks argued that

his habeas corpus petition presented twenty-six "substantial" ineffective-assistance-of-trial-counsel claims that "were never properly raised or presented during initial collateral review proceedings" due to his post-conviction counsel's ineffectiveness, and thus that he was entitled to an evidentiary hearing and habeas relief under *Martinez* and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013).  R. 102 (Pet. *Martinez* Br. at 14) (Page ID #612).

On August 1, 2014, the district court again denied Middlebrooks's petition, finding that his ineffective-assistance-of-trial-counsel claims were not "substantial" under *Martinez* and thus did not warrant an evidentiary hearing or habeas relief.  R. 105 (08/01/14 D. Ct. Op. at 25) (Page ID #810).  The district court granted a COA "on the issues of whether Petitioner's claims about his trial and post conviction counsel's omissions justify an evidentiary hearing and habeas relief under <u>Martinez</u> and <u>Trevino</u>."  *Id.*  Middlebrooks timely appealed.  R. 107 (Notice of Appeal) (Page ID #838).

## II.  DISCUSSION

### A.  *Martinez* and *Trevino* Do Not Assist Middlebrooks's Habeas Claims

Middlebrooks first argues that the district court erred in denying his habeas petition in light of *Martinez* and *Trevino*.  Appellant Br. at 31.  This court reviews de novo a district court's denial of a petition for writ of habeas corpus.  *See Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court cannot grant habeas relief for "any claim that was adjudicated on the merits" by the state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or was "based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d).  Further, because federal courts must defer to "a State's application of its own firmly established, consistently followed, constitutionally proper procedural rules," *Trevino*, 133 S. Ct. at 1917, a federal court is barred from granting habeas relief if the petitioner has procedurally defaulted his claims in state court.  *See Hodges v. Colson*, 727 F.3d 517, 529–30 (6th Cir. 2013).  We review de novo "[w]hether a petitioner's federal habeas claim is barred by procedural default."  *Id.* at 529.  A prisoner may overcome a state-court procedural default only if the petitioner can

establish "cause" and "prejudice," or a "manifest miscarriage of justice." *Sutton v. Carpenter*, 745 F.3d 787, 790–91 (6th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991)).

We held in our prior opinion that Middlebrooks was not entitled to habeas relief for his ineffective-assistance-of-counsel claims because (1) Middlebrooks procedurally defaulted two of his claims at the Tennessee Court of Criminal Appeals and could not establish "cause" to excuse the default; (2) Middlebrooks abandoned one claim on appeal to our court; and (3) the Tennessee state court did not unreasonably apply federal law in resolving Middlebrooks's remaining claim on the merits. *See Middlebrooks*, 619 F.3d at 535–41. The Supreme Court vacated our judgment and remanded the decision in light *Martinez v. Ryan*. Accordingly, prior to evaluating Middlebrooks's claims, we first discuss the holding of *Martinez*.

### 1. The Supreme Court's Decisions in *Martinez* and *Trevino*

The Court in *Martinez* established an exception to the general rule of *Coleman v. Thompson*, 501 U.S. at 756–57. *See Sutton*, 745 F.3d at 791. *Coleman* held that, although counsel's ineffectiveness during *direct* appeal may establish "cause" to excuse a petitioner's procedural default, a petitioner cannot establish "cause" to excuse default that results from counsel's ineffectiveness during *post-conviction* proceedings. *See Coleman*, 501 U.S. at 756–57. This is because "a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review." *Id.* at 756.

*Martinez* modified *Coleman*'s rule in a narrow circumstance: where state law requires that a defendant bring an ineffective-assistance-of-trial-counsel claim in post-conviction proceedings, rather than on direct appeal, an attorney's constitutionally deficient performance in the initial-review collateral proceeding can establish "cause" to excuse the default of the petitioner's ineffective-assistance-of-trial-counsel claim. *Martinez*, 132 S. Ct. at 1318. "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 1318–19 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

In *Trevino*, the Court expanded *Martinez* and held that *Martinez*'s exception also applies "when a state's procedural framework makes it 'highly unlikely' that a defendant in a typical case will have a meaningful opportunity' to raise ineffective-assistance claims on direct appeal," even if the state does not explicitly require ineffective-assistance-of-trial-counsel claims to be brought only on collateral review. *Sutton*, 745 F.3d at 791 (quoting *Trevino*, 133 S. Ct. at 1921). Our determination of whether the *Martinez-Trevino* rule applies depends on proceedings in the state trial court on its initial post-conviction review, and "does not extend to 'appeals from initial-review collateral proceedings . . . .'" *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 713 (6th Cir. 2015) (quoting *Martinez*, 132 S. Ct. at 1320). We have held that the *Martinez-Trevino* rule applies in Tennessee cases. *Sutton*, 745 F.3d at 792.

### 2. Application of *Martinez* and *Trevino* to Middlebrooks's Claims

On remand to the district court, Middlebrooks argued that *Martinez* and *Trevino* apply to excuse the procedural default of twenty-six of the ineffective-assistance-of-trial-counsel claims that he raised in his habeas petition. *See* R. 102 (Pet. *Martinez* Br. at 14) (Page ID #612). The district court concluded that relief was not warranted because Middlebrooks's ineffective-assistance-of-trial-counsel Claims 9a and 9b—two claims addressed by our prior decision—were not "substantial" under *Martinez*. R. 105 (08/01/14 D. Ct. Op. at 25) (Page ID #810). Middlebrooks contends on appeal that the district court used the wrong standard to determine whether his claims were "substantial." Appellant Br. at 45–46. Moreover, Middlebrooks argues that the district court erroneously failed to consider the twenty-four remaining claims presented in his habeas petition. *Id.* at 50–51.

We agree with Middlebrooks that the district court erred in its "substantiality" inquiry. The district court determined that Claims 9a and 9b were insubstantial because we held in our prior opinion that Middlebrooks failed to establish "cause" and "prejudice" to excuse their default. R. 105 (08/01/14 D. Ct. Op. at 25) (Page ID #810); *see also Middlebrooks*, 619 F.3d at 537–38. Under *Martinez*, however, an underlying ineffective-assistance-of-trial-counsel claim is "substantial" if it "has some merit," a different inquiry. *Martinez*, 132 S. Ct. at 1318–19 (citing *Miller-El*, 537 U.S. 322). Despite this error, we affirm the district court's judgment for an alternative reason. *See Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003).

After carefully reviewing the record, we find that *Martinez* and *Trevino* do not affect Middlebrooks's habeas claims because these claims were either (1) defaulted on post-conviction appeal; (2) defaulted on appeal to our court; or (3) resolved on the merits in state court and our prior opinion.

### a. Claims 9a and 9b

Following the district court's initial denial of Middlebrooks's habeas petition, we granted a COA to address four of Middlebrooks's ineffective-assistance claims. *Middlebrooks*, 619 F.3d at 535. Middlebrooks argues that two of the claims that we addressed in our prior opinion— Claims 9a and 9b—fall under the rule of *Martinez-Trevino*. Appellant Br. at 47–49. We disagree.

Claim 9a of Middlebrooks's habeas petition asserts that his counsel was ineffective in failing to investigate and present evidence of Middlebrooks's brain damage. Appellant App. at 171. Claim 9b alleges that Middlebrooks's trial counsel was ineffective in "fail[ing] to investigate Mr. Middlebrooks's history of severe physical and sexual abuse." *Id.* at 174; *see also Middlebrooks*, 619 F.3d at 537. In denying Middlebrooks relief on the basis of these claims, our prior opinion held that Middlebrooks procedurally defaulted both of these issues by "fail[ing] to offer any authority in support . . . on postconviction appeal" to the Tennessee Court of Criminal Appeals. *Middlebrooks*, 619 F.3d at 535–36. Specifically, Middlebrooks failed to comply with Tennessee Court of Criminal Appeals Rule 10(b), which states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived." *Id.* at 535–36 (quoting Tenn. Ct. Crim. App. R. 10(b)). Middlebrooks raised his trial counsel's failure to investigate his brain damage and his trial counsel's failure to investigate his history of abuse "in an addendum to his appellate brief," but Middlebrooks provided no further argument or citations. *Id.* at 536, 538. The Tennessee Court of Criminal Appeals accordingly held that Middlebrooks waived these claims. *Id.* at 536, 538; *see also Middlebrooks*, 2003 WL 61244, at *12.

Significantly, the *Martinez-Trevino* exception does not apply to save procedural defaults that occur in "appeals from initial-review collateral proceedings." *Martinez*, 132 S. Ct. at 1320;

*see West v. Carpenter*, 790 F.3d 693, 698 (6th Cir. 2015). "[A]ttorney error at state post-conviction appellate proceedings cannot excuse procedural default under the *Martinez-Trevino* framework." *West*, 790 F.3d at 699.

Had Middlebrooks not procedurally defaulted on Claims 9a and 9b at the appellate stage of his initial state post-conviction review, habeas relief on these claims would still be inappropriate under *Martinez-Trevino* because both were presented on initial state post-conviction review and rejected by the court on the merits. Habeas relief is thus not warranted for Claims 9a and 9b because those claims were raised and rejected on the merits by the initial post-conviction court, and ineffective assistance of counsel on post-conviction appeal cannot establish "cause" to excuse Middlebrooks's procedural default, which occurred only in the Tennessee Court of Criminal Appeals. For those reasons, *Martinez* and *Trevino* do not apply to Claims 9a or 9b.

### b. Middlebrooks's Remaining Claims

The district court did not discuss the substantiality of Middlebrooks's remaining twenty-four claims of ineffective assistance that were not included in the COA that we granted in Middlebrooks's initial appeal. The state argues that, because we denied a COA for these claims, we have already determined that these claims were not "substantial" within the meaning of *Martinez*, and thus relief is not warranted. Appellee Br. at 25–27. Middlebrooks contends, by contrast, that it was error for the district court not to address these claims and that remand is appropriate for the district court to address the "substantiality" of these claims in the first instance. Appellant Br. at 51–52.

We need not decide whether our previous denial of a COA sufficiently determines the "substantiality" of these claims. Here, the record establishes that none of Middlebrooks's remaining claims fall under the *Martinez-Trevino* rule, even if the underlying ineffective-assistance-of-trial counsel claim is deemed "substantial." We consider each of Middlebrooks's remaining claims below.

### i.　　Claims Relating to Trial Counsel's Failure to Present Evidence of Middlebrooks's Mental Illness and Brain Damage

Middlebrooks's habeas petition presents several claims relating to his trial counsel's "fail[ure] to investigate and present evidence of mental illness and brain damage," including Claims 9g,[1] 9j,[2] and 9cc.[3] Appellant App. at 176, 178–79; *see* Appellant Br. at 52. As the government argues, however, these claims are cumulative of Claim 9a of Middlebrooks's habeas petition, which alleges that "[t]rial counsel failed to investigate and present evidence of Donald Middlebrooks's seizure disorder to the jury, failed to investigate and present evidence that Donald Middlebrooks does in fact suffer severe mental illness . . . and failed to investigate and present evidence . . . that Donald Middlebrooks suffers brain injury and/or brain dysfunction." Appellant App. at 171; *see* Appellee Br. at 28. As discussed above, we determined in our prior opinion that Middlebrooks defaulted Claim 9a on post-conviction appeal to the Tennessee Court of Criminal Appeals. *Middlebrooks*, 619 F.3d at 535–36. Because these additional claims duplicate Claim 9a, Middlebrooks is similarly not entitled to relief on these claims.

### ii.　　Claims Relating to Trial Counsel's Failure to Present Evidence of Brewington's Relative Culpability

Middlebrooks also raises several claims that his trial counsel was ineffective in failing to make arguments or develop evidence relating to the relative culpability of his co-defendant Brewington, including Claims 9c,[4] 9d,[5] 9q,[6] 9gg,[7] and 9ii.[8] *See* Appellant Br. at 61. These

---

[1]Claim 9g asserts that "[t]rial counsel failed to move for expert assistance, including, but not limited to, a neuropsychologist who could have addressed the issue of brain damage and its effect upon Donald Middlebrooks." Appellant App. at 176.

[2]Claim 9j states that "[t]rial counsel failed to adequately investigate the mental state of the petitioner including neurological impairment." *Id.*

[3]Claim 9cc asserts that "[t]rial counsel failed to move for expert assistance of a neurologist who could have conducted necessary testing and provided expert testimony regarding the issue of brain damage and its effect upon Donald Middlebrooks." *Id.* at 178–79.

[4]Claim 9c contends that "[t]rial counsel failed to argue to the jury that the death sentence was improper where Roger Brewington only received a life sentence." *Id.* at 175.

[5]Claim 9d alleges that "[t]rial counsel failed to recognize, investigate, pursue, develop, and present mitigating evidence regarding co-defendant Roger Brewington's relative dominance over Donald Middlebrooks, especially in light of Mr. Middlebrooks's brain damage and neurocognitive dysfunction." *Id.* at 175–76.

claims are duplicative of Claim 9hh of Middlebrooks's federal habeas petition, however, which alleges that "[t]rial counsel failed to recognize, investigate, pursue, develop and present mitigating evidence regarding co-defendant Brewington's relative dominance over Donald Middlebrooks." Appellant App. at 179. "[T]he Tennessee Court of Criminal Appeals resolved this claim on the merits on postconviction review," concluding that Middlebrooks could not establish prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). *Middlebrooks*, 619 F.3d at 538–39. We held in our prior opinion that, "[c]onstrained by AEDPA, we must affirm because we cannot say that the state court's application of *Strickland*'s prejudice prong was unreasonable." *Id.* at 541. Because Claims 9c, 9d, 9q, 9gg, and 9ii are cumulative of Claim 9hh—a claim that was not defaulted on initial-review collateral proceeding but rather was determined on the merits—*Martinez-Trevino* does not apply, and Middlebrooks is not entitled to relief or further evidentiary development on the basis of these claims. *See Moore v. Mitchell*, 708 F.3d 760, 785 (6th Cir. 2013).

We note that Claim 9c, which faults counsel for "fail[ing] to argue to the jury that the death sentence was improper where Roger Brewington only received a life sentence," is the most distinctive of these claims (as it contends that counsel failed to make a specific sentencing argument to the jury), and that a colorable argument could be made that 9c was therefore not considered by the state court. In that scenario, we would remand Claim 9c to the district court for analysis of whether the claim is substantial under *Martinez*. We conclude that remand on Claim 9c is unnecessary, because even if Claim 9c is determined to be substantial, we are convinced by the record in its entirety and the arguments raised in and rejected by the initial post-conviction court that any failure of trial counsel to argue for a lesser sentence as contemplated by this claim did not prejudice Middlebrooks because there is not a reasonable probability that counsel's failure to make the argument affected the outcome of his sentencing.

---

[6]Claim 9q states that "[t]rial counsel failed to adequately investigate and present evidence of the culpability of the two co-defendants and the effect they had on the mental state of Donald Middlebrooks." *Id.* at 177.

[7]Claim 9gg asserts that "[t]rial counsel failed to adequately investigate and present evidence of the relative involvement of the two co-defendants—at the guilt/innocence stage of the first trial and the sentencing stage of first and second trials." *Id.* at 179.

[8]Claim 9ii provides that "[t]rial counsel failed to present the following mitigating evidence related to co-defendant Brewington . . . ." *Id.* at 179–81.

### iii.      Claims Relating to Trial Counsel's Failure to Prepare
###           Defense Expert Dr. Smalldon

Middlebrooks's habeas petition raised numerous claims relating to trial counsel's failure to communicate with Dr. Smalldon and adequately prepare for his testimony, including Claims 9k[9] and 9l.[10]  *See* Appellant Br. at 52.  The record demonstrates, however, that these claims are cumulative of Claim 9e of Middlebrooks's habeas petition, which asserts that "[t]rial counsel failed to adequately prepare for the testimony of its expert, Dr. Jeffrey Smalldon."  Appellant App. at 176.  We explained in our prior opinion that Middlebrooks abandoned Claim 9e on appeal to our court because Middlebrooks presented no argument in his opening brief and failed to raise any argument on reply, even after the state addressed Middlebrooks's omission.  *Middlebrooks*, 619 F.3d at 538.  Accordingly, because Claims 9k and 9l duplicate a claim that Middlebrooks abandoned on appeal to our court, *Martinez* and *Trevino* do not apply.[11]

### iv.      Claim Relating to Trial Counsel's Failure to Object to the
###           Victim's Mother at the Prosecution Table

Claims 9s and 9nn of Middlebrooks's petition allege that trial counsel was ineffective for failing "to make sufficient objections to the presence of the mother of the victim at counsel table for the prosecution and to her behavior at trial," and for failing to argue this on direct appeal.  Appellant App. at 177, 182–83; *see* Appellant Br. at 64.  A review of the record establishes that Middlebrooks raised the issue of the victim's mother sitting at the prosecution table in his initial-

---

[9]Claim 9k asserts that "[t]rial counsel failed to adequately communicate with the defense expert and supply him with appropriate and accurate information concerning the background, mental and neurological state of Donald Middlebrooks." *Id.* at 176.

[10]Claim 9l provides that "[t]rial counsel failed to sufficiently communicate with and prepare the defense expert witness for testimony at trial." *Id.*

[11]Middlebrooks's brief does not specifically address Claims 9o, 9dd, and 9ee of his federal habeas petition, although Middlebrooks includes these claims in his list of claims that he contends are "worthy of further proceedings under *Martinez*." *See* Appellant Br. at 51.  A review of the record demonstrates that these claims also duplicate Claim 9e. *See* Appellant App. at 177, 179.  Thus, even if Middlebrooks has not waived arguments relating to these claims, he is not entitled to relief under *Martinez-Trevino* for the same reason that he is not entitled to relief on claims 9k and 9l.

review proceedings in Tennessee state court: this claim was labeled as Claim (9)(n)[12] in his state post-conviction petition. Appellee App. at 9. Middlebrooks included Claim (9)(n) in the addendum that he filed in the Tennessee Court of Criminal Appeals, but presented no additional argument or citations. *Id.* at 105. Because these claims were considered and rejected on the merits by the initial state post-conviction court, *Martinez* and *Trevino* cannot apply to cure any procedural default that may have occurred at the state appellate court.

### v.　Claim Relating to Trial Counsel's Failure to Suppress Middlebrooks's Statements to the Police

Claim 9r of Middlebrooks's habeas petition contends that trial counsel was ineffective in "fail[ing] to investigate and develop appropriate evidence to suppress Donald Middlebrooks's statements to the police." Appellant App. at 177; *see* Appellant Br. at 67. Like the claim described above, however, this claim was included in Middlebrooks's initial post-conviction motion in state trial court: Middlebrooks labeled this claim in his state-court petition as Claim (9)(m). Appellee App. at 9. As with the claim discussed above, this claim was considered and rejected on the merits by the initial post-conviction court, and *Martinez* and *Trevino* do not apply to the failure to preserve this claim on appeal.

### vi.　Claim Relating to Trial Counsel's Failure to Request Jury Instruction

Claim 9mm(6) of Middlebrooks's habeas petition alleges that trial counsel was ineffective in failing to request a contemporaneous jury instruction regarding Middlebrooks's lack of remorse. Appellant App. at 182; *see* Appellant Br. at 68. A review of the record demonstrates that Middlebrooks included this claim in his initial post-conviction petition in state trial court, labeled as Claim (9)(hh)(vi).[13] Appellee App. at 14. Like the two claims above, this claim is not affected by *Martinez-Trevino*.

---

[12]Claim (9)(n) of Middlebrooks's state petition alleges trial counsel's "failure to make sufficient objections to the presence of the mother of the deceased at the prosecution counsel table and her predictable subsequent behavior at trial." Appellee App. at 9.

[13]Claim (9)(hh) of Middlebrooks's state petition provides that trial counsel was ineffective for "fail[ing] to timely object and/or preserve or present the following issues for direct appeal . . . (vi) no contemporaneous jury instruction regarding Detective Moore's characterization of Petitioner's lack of remorse." Appellee App. at 14.

### vii.    Claims Relating to Trial Counsel's Failure to Strike Jurors or Appropriately Charge Jurors

Middlebrooks's habeas petition also raises several claims relating to trial counsel's ineffectiveness for failing to strike various jurors, including Claims 9w[14] and 9y,[15] in addition to both claims labeled 9x.[16]    Appellant App. at 178; *see* Appellant Br. at 71.    These claims were presented in his initial post-conviction petition in state-trial court, however, as Claims (9)(r)[17] and (9)(hh)(viii).[18]    Appellee App. at 9, 14.    The same is true for Claim 9t of Middlebrooks's federal habeas petition, which asserts that "[t]rial counsel failed to object to charging the jury pursuant to the statutory language regarding mitigating circumstances."    Appellant App. at 177; *see* Appellant Br. at 74.    This was presented in Middlebrooks's initial petition as (9)(o),[19] *see* Appellee App. at 9.    Like the claims discussed above, this claim is not saved by *Martinez-Trevino*.

Significantly, in concluding its initial post-conviction opinion, the state court stated, "[t]he Court has considered all the other grounds set forth in the petition and finds them without merit.    They are grounds previously determined or grounds upon which no proof was offered."    State Ct. Mem. & Order at 28.

---

[14]Claim 9w states that "[t]rial counsel failed to adequately voir dire the jury to determine whether each juror had any opinions which would substantially interfere with his or her ability to follow the law."    Appellant App. at 178.

[15]Claim 9y provides that "[t]rial counsel failed to strike juror Margolis where he stated that he would impose the death sentence if the defendant could be paroled."    *Id.*

[16]The claims labeled as Claim 9x contend that "[d]uring voir dire, trial counsel failed to follow up on issues presented by the jury questionnaire, including but not limited to, inquiring of the juror Cummings concerning her relationship to a police officer" and "[t]rial counsel failed to strike juror Moore, given her religious instruction concerning the death penalty . . . and her improper view of deterrence as a basis for imposing the death sentence."    *Id.*

[17]Claim (9)(r) asserts that trial counsel "fail[ed] to adequately voir dire the jury to determine whether each juror had any opinions which would substantially interfere with his or her ability to follow the law."    Appellee App. at 9.

[18]Claim (9)(hh) states that trial counsel "fail[ed] to timely object and/or preserve or present the following issues for direct appeal . . . (viii) the trial court's errors in failing to remove jurors for cause, as requested by the defense."    *Id.* at 14.

[19]Claim (9)(o) of Middlebrooks's state petition contends that trial counsel "fail[ed] to object to charging the jury pursuant to the statutory mitigation language which, in effect, prevented the jury from listening to and giving effect to all mitigation evidence."    *Id.* at 9.

Accordingly, after careful review of the record, we find that Middlebrooks's remaining claims were either resolved on the merits, defaulted in post-conviction appeal, or defaulted on appeal to this court, and thus Middlebrooks is not entitled to habeas relief pursuant to *Martinez* and *Trevino*.

**B. Middlebrooks is Not Entitled to Relief Under the Eighth Amendment**

Middlebrooks next contends that our prior opinion failed to address his Eighth Amendment argument—Claim 13(c) in his federal habeas petition—that the prosecution violated *Booth v. Maryland*, 482 U.S. 497 (1987), and *Payne v. Tennessee*, 501 U.S. 808, 830 n.2 (1991), by arguing in its closing argument for the jury to impose the death penalty "based upon the wishes of the victim's mother." Appellant Br. at 82. We note that this is the third time that Middlebrooks has presented his *Booth* argument to our panel. Middlebrooks argued that *Booth* entitled him to relief in his appeal from the district court's initial denial of his habeas petition. *See* 2009 Appellant Br. at 64; 2009 Reply Br. at 19. Following our 2010 opinion, Middlebrooks argued in a petition for panel rehearing that we incorrectly addressed his Eighth Amendment claim. We denied Middlebrooks's petition for panel rehearing on February 1, 2011. *See Middlebrooks v. Bell*, No. 05-5904 (6th Cir. Feb. 1, 2011) (unpublished order). We find no error in our prior panel decision.

On direct appeal in state court, Middlebrooks argued that the prosecutor improperly "emphasiz[ed] the victim's family's desire that the death penalty be returned." *State v. Middlebrooks*, 995 S.W.2d at 557. Middlebrooks contended "that the misconduct violated his right to due process and led to arbitrary and unreliable sentencing in violation of the Eighth and Fourteenth Amendments to the United States Constitution," in addition to the Tennessee Constitution. *Id.* "[T]he Tennessee Supreme Court concluded that [the prosecutor's] statements were improper but that they did not require reversal because they did not affect the jury's verdict." *Middlebrooks*, 619 F.3d at 543 (citing *Middlebrooks*, 995 S.W.2d at 557–61). Our prior opinion reviewed whether the state court unreasonably applied *Darden v. Wainwright*, 477 U.S. 168 (1986), which establishes the standard for determining whether a prosecutor's "comments were flagrant enough to violate" the defendant's due-process rights. *Middlebrooks*,

619 F.3d at 543.  We held that the Tennessee Supreme Court did not unreasonably apply federal law.  *Id.* at 544.

Middlebrooks contends that the Tennessee Supreme Court's decision was contrary to *Booth* and *Payne* and that our opinion erroneously ignored the Eighth Amendment in applying *Darden* and the due-process clause.  Apellant Br. at 82, 86–87.  We disagree.  The Supreme Court in *Booth* evaluated the constitutionality of admitting a "Victim Impact Statement" into evidence at a capital sentencing hearing; the impact statement at issue contained two types of information:  "[f]irst, it described the personal characteristics of the victims and the emotional impact of the crimes on the family," and "[s]econd, it set forth the family members' opinions and characterizations of the crimes and the defendant."  *Booth*, 482 U.S. at 502.  The Supreme Court held that the admission into evidence of both types of information violated the Eighth Amendment.  *Id.* at 507–09.  The Court revisited its holding in *Booth* a few years later in *Payne v. Tennessee*, 501 U.S. 808, 827 (1991), holding that "if the State chooses to permit the admission of victim impact evidence . . . , the Eighth Amendment erects no *per se* bar."  Instead, "[i]n the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief."  *Id.* at 825 (citing to *Darden*, 477 U.S. at 179–83).  We have observed that the Court noted that its decision in *Payne* "overturned only that part of *Booth* that disallowed 'evidence . . . relating to the victim and the impact of the victim's death on the victim's family,'" but that it was not disturbing the "portion of *Booth* that forbids 'a victim's family members' characterization and opinions about the crime, the defendant, and the appropriate sentence'" from being admitted into evidence.  *Fautenberry v. Mitchell*, 515 F.3d 614, 638 (6th Cir. 2008) (quoting *Payne*, 501 U.S. at 830 n.2).

Middlebrooks argues that because *Payne* did not disturb *Booth*'s holding that the Eighth Amendment prohibits evidence of "a victim's family members' characterization and opinions about . . . the appropriate sentence," our earlier opinion in *Middlebrooks* failed to evaluate whether the Tennessee Supreme Court's decision is contrary to *Booth*.  Contrary to Middlebrooks's argument, however, we appropriately applied *Darden* to the state court's decision.  In evaluating Middlebrooks's argument on direct appeal, the Tennessee Supreme

Court cited *Booth* and *Payne*, but recognized that *evidence* of the victim's opinions about the crime was not admitted at Middlebrooks's sentencing hearing, as was the case in *Booth*; instead, the prosecutor in Middlebrooks's trial made improper statements during closing arguments. *Middlebrooks*, 995 S.W.2d at 558. The Tennessee Supreme Court evaluated Middlebrooks's argument under a heading entitled "prosecutorial misconduct" and ultimately "conclude[d] that the prosecutor's misconduct did not prejudicially affect the jury's verdict" after applying its five-factor test for evaluating a prosecutor's remarks. *Id.* at 557–60 (citing *State v. Bigbee*, 885 S.W.2d 797, 809 (Tenn. 1994)). We did not overlook or erroneously evaluate Claim 13(c) in our prior opinion; rather, because the prosecution had not introduced evidence at sentencing in violation of *Booth*, we dismissed Middlebrooks's claims on the merits under AEDPA after determining that the state court did not unreasonably apply *Darden*, *see Middlebrooks*, 619 F.3d at 543–44, which is the relevant "clearly established Federal law" for evaluating whether a prosecutor's improper statements during closing arguments "so infected the trial with unfairness so as to make the resulting conviction a denial of due process." *See Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (quoting *Darden*, 477 U.S. at 181). Middlebrooks is not entitled to relief on this claim.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment denying Middlebrooks's petition for a writ of habeas corpus.