*Notice:* *This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 23-CO-0080

TIMOTHY J. PARKER, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2010-CF2-012342)

(Hon. Laura A. Cordero, Motions Judge)

(Argued April 10, 2024     Decided August 14, 2025)

*Peter A. Bruland*, with whom *Carter G. Phillips*, *Jeffrey T. Green*, *Cody M. Akins*, and *Alexandra T. Mushka* were on the brief, for appellant.

*David P. Saybolt*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney at the time of argument, *Chrisellen R. Kolb*, *Nicholas P. Coleman*, and *Laura Bach*, Assistant United States Attorneys, were on the brief, for appellee.

Before BECKWITH and HOWARD, *Associate Judges,* and STEADMAN, *Senior Judge.*

STEADMAN, *Senior Judge*: Appellant Timothy J. Parker asks us to vacate his conviction for voluntary manslaughter following his involvement in a shoot-out between two rival gangs and a resulting death. In his collateral attack to this conviction under D.C. Code § 23-110, he asserts that during his trial the jury was

improperly instructed on an "urban gun battle" theory under *Roy v. United States*, 871 A.2d 498 (D.C. 2005). We overruled *Roy* in *Fleming v. United States*, 224 A.3d 213 (D.C. 2020) (en banc), replacing its "substantial factor" test for proving causation with a "but-for" test. While acknowledging the error, the government contends that given its evidence at trial, this misinstruction did not affect the outcome of the trial. As part of this argument, the government asserts that we must review what it terms factual findings underlying the trial court's order denying Parker's motion for clear error. We disagree with the government on both issues and vacate Parker's convictions for voluntary manslaughter while armed and the related possession of a firearm during a crime of violence.

## I. Factual and Procedural Background

Parker was implicated as a participant in a gun battle between two rival gangs known as the "Avenue" and the "Circle" that took place on May 30, 2010, in the Benning Terrace housing complex.[1] The evidence at trial showed that on May 30, three members of the Circle crossed over into Avenue territory and fired several rounds before returning to the Circle. Soon after, three Avenue members crossed into the cul-de-sac that marked the Circle's territory and the two groups

---

[1] The complex consists of "apartment buildings, row houses, and common areas" in the Southeast corner of the District. *See McCray v. United States*, 133 A.3d 205, 211 n.5 (D.C. 2016).

fired upon each other while neighbors ran for cover. In the shooting, Antwan Buckner, a bystander, was killed when he ran across the courtyard. We have previously laid out in extensive detail the facts pertaining to the May 30, 2010, shootout between the Circle and Avenue gangs. *See McCray*, 133 A.3d at 212-17. For the purposes of this opinion, we adopt that recitation and limit this opinion to Parker's involvement.

## A. The Government's Case at Trial

The trial extended over two months, involving some sixty witnesses and more than 500 exhibits. Parker was a defendant alongside four Circle codefendants on six criminal counts: second-degree murder while armed, conspiracy to commit murder, conspiracy to commit assault, possession of a firearm during a crime of violence, carrying a pistol without a license, and unlawful possession of a firearm. In pursuit of second-degree murder while armed, the government relied on an "urban gun battle" theory to prove that Parker was, by participating in a gang shootout that led to the death of his best friend, Antwan Buckner, a "substantial factor" in that death. As it related to Parker, the government introduced a range of evidence to prove his involvement in the battle, primarily testimony from an uninvolved resident, Shunedia "Nita" Rajah, that Parker was armed and was, to her memory, the first person who fired a shot that

day.  According to Rajah, after Parker fired his first shot, he went back inside to fix a firearm jam.  However, other government witnesses contradicted this testimony in part and claimed either that Avenue members shot first or that the two groups began firing at each other at the same time.  The government also introduced testimony from a thoroughly impeached witness who was not present at the shootout, Kurtis "Kurdo" Faison.  According to Faison, Parker confessed to him while they were in prison that he was one of the masterminds behind the firefight who had ordered the three Circle members to go over to Avenue territory to initiate the battle.

In its opening statement, however, the government emphasized to the jury that the specific details of the battle did not matter, as "under the law, when you go out there and you just start willy-nilly firing in a public space and turn it into a battleground, you're responsible."  In its closing statement after summarizing its evidence against the codefendants, the government pointedly reoriented the jury, stating, "[n]ow all of this brings us to a very important question.  Just who shot Antwan Buckner.  And the answer is it doesn't matter."  According to the government, as each participant "engage[d] in a gun battle with another crew" that resulted in a death, they all were substantial factors of that death and thus criminally responsible.

Following the two-month-long trial, Parker was acquitted of second-degree murder while armed but convicted of the lesser-included offense of voluntary manslaughter while armed, as well as each of the firearms-related charges, including possession of a firearm during a crime of violence. He also was acquitted of conspiracy to commit murder, and the trial court declared a mistrial following a further week of deliberation on the conspiracy to commit assault charge.

## B. Procedural History

During the course of Parker's direct appeal, this court substantially curtailed the urban gun battle theory in *Fleming*, 224 A.3d at 213, as noted above. Parker attempted to raise a *Fleming* challenge to his voluntary manslaughter conviction, but we declined to consider the claim. We said that the proper mechanism for challenging the alleged instructional error would be to file a motion pursuant to D.C. Code § 23-110. *Parker v. United States*, 254 A.3d 1138, 1142, 1147 (D.C. 2021).[2]

---

[2] Parker's conviction was initially affirmed in part and reversed in part with a case remand to the trial court on specific issues. *McCray*, 133 A.3d at 240. Parker appealed the trial court's decision following the remand. While this second appeal was pending, we decided *Fleming*, whereupon Parker raised a *Fleming* challenge for the first time. *Parker*, 254 A.3d at 1141. Since the remand from the

In response, Parker filed pro se the instant Section 23-110 motion in Superior Court. The Superior Court denied the motion without a hearing on the ground that the claim was procedurally defaulted for Parker's failure to raise the issue on direct appeal. *See Hardy v. United States*, 988 A.2d 950, 960 (D.C. 2010). While the trial court found "cause," excusing his earlier failure to raise the issue, it determined that Parker was not prejudiced by the alleged errors, and thus could not meet both requirements to overcome his procedural default. In support of its decision, the trial court adopted the government's position that even if the jury had been properly instructed, there was no reasonable probability that the jury would not have convicted him.

## II. Standard of Review

Under Section 23-110, a defendant "in custody under sentence of the Superior Court claiming . . . that . . . the sentence was imposed in violation of the Constitution . . . may move the court to vacate, set aside, or correct the sentence." D.C. Code § 23-110(a). Such a motion may be procedurally barred, however, "[w]here a defendant has failed to raise an available challenge to his conviction on direct appeal." *Head v. United States*, 489 A.2d 450, 451 (D.C. 1985). In such a

first appeal was a case remand, we held that the issue was raised too late on the second appeal and should be addressed under Section 23-110.

case, the defendant "may not raise that issue on collateral attack unless he shows both cause for his failure to do so and prejudice as a result of his failure." *Id.*

All parties agree that the central issue in this case is whether Parker can show both cause and prejudice to overcome procedural default under Section 23-110. However, the government does not presently contest the trial court's determination that Parker has shown cause, leaving to us the sole question whether he can show prejudice.[3] Parker contends that he suffered actual prejudice from the *Roy* instruction and that the trial court thus erred in denying his Section 23-110 motion.

In reviewing prejudice, as the parties agree, Parker must demonstrate "actual prejudice"; thus, he must show "'not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Washington v. United States*, 834 A.2d 899, 903 (D.C. 2003) (emphasis omitted) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). The parties also do not contest the legal standard in this case; they agree that for actual prejudice, Parker must show that there is a reasonable probability that, but for the alleged

---

[3] In *Fleming*, the government made no argument that the instructional error was harmless, and we therefore did not address that possibility. *See generally*, 224 A.3d 213.

error, the result of the proceeding would have been different. *St. John v. United States*, 227 A.3d 141, 145 (D.C. 2020). Following a jury trial, this does not mean that Parker must show that he would have been acquitted, rather he must show that there is a reasonable probability that he would not have been convicted. *Id.*

The government, however, contends that the trial court's determination that Parker was not prejudiced by any error was supported by specific factual findings, which we must review for clear error. Parker disagrees, and claims that a finding of prejudice is a pure legal question and that we should review de novo in all respects. We agree that de novo review is the proper standard for this appeal.

The government asserts that the trial court specifically found both that Parker masterminded the initial shooting that preceded the battle and that he was the first shooter. Carefully read, however, the trial court in its ruling did not make any factual "findings." Rather, after no more than taking note of certain evidence in the jury record supportive of but-for causation, the trial court concluded that Parker had failed to demonstrate prejudice in any argument made to the court. Thus, no evidentiary hearing took place, and there were no factual findings by the trial court to raise a clear issue now that its ruling is on appeal. On the record before us—the same record available to the motions judge who did not preside at the trial itself—the ultimate question of prejudice is here a pure question of law.

This reflects our understanding that procedural default presents a mixed question of law and fact, where "[w]e accept the judge's factual findings unless they lack evidentiary support, but we review his or her legal conclusions de novo." *Bost v. United States*, 178 A.3d 1156, 1210 (D.C. 2018) (quoting *Derrington v. United States*, 681 A.2d 1125, 1132 (D.C. 1996)). Prejudice in the procedural default context is a legal determination, as it is in analogous circumstances. Where we consider prejudice pursuant to *Brady* or *Strickland* claims,[4] we have applied de novo review. *See, e.g.*, *Turner v. United States*, 116 A.3d 894, 914-15 (D.C. 2015) (*Brady*); *Chatmon v. United States*, 801 A.2d 92, 110 (D.C. 2002) (*Strickland*). Additionally, as an appellate body, we routinely conduct prejudice inquiries when evaluating claims under plain or harmless error. *E.g.*, *Malloy v. United States*, 186 A.3d 802, 815-16 (D.C. 2018) (plain error); *Tann v. United States*, 127 A.3d 400,

---

[4] Under *Brady*, a defendant may challenge his conviction if he can prove that the prosecution failed to make a timely disclosure of exculpatory evidence and that the failure prejudiced his defense. *Mackabee v. United States*, 29 A.3d 952, 959 (D.C. 2011) (citing *Brady v. United States*, 373 U.S. 83, 87 (1963)). Under *Strickland*, a petitioner may challenge his conviction by bringing a claim of ineffective assistance of counsel showing that counsel's deficient performance prejudiced his defense. *See Bellinger v. United States*, 127 A.3d 505, 515 (D.C. 2015) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

487 (D.C. 2015) (harmless error).  For all these reasons, we apply de novo review in all respects.[5]

The government separately contends that we must review Parker's specific arguments with respect to prejudice for plain error.  According to the government, while Parker raised the issue of prejudice broadly, he should be constrained to his argument below that William "Wheetie" Spriggs, one of the Avenue gang members, had a reputation for violence and was intent on starting the shooting regardless of Parker's actions.  We reject the government's contention because we disagree with its characterization of the record.  Parker, in his initial pro se filing, claimed that he satisfied the prejudice prong because the evidence at trial, including some evidence that he was the first shooter and had fired at Spriggs, "while sufficient to sustain a conviction for voluntary manslaughter under the 'substantial factor' causation theory, would not have supported a conviction for voluntary manslaughter if the jury had been properly instructed . . ."  While Parker also raised specific arguments related to prejudice, he maintained a broad

---

[5] Federal appeals courts review de novo the same determination of prejudice when evaluating if a petitioner can overcome procedural default.  *E.g.*, *Prible v. Lumpkin*, 43 F.4th 501, 513 (5th Cir. 2022); *Lee-Kendrick v. Eckstein*, 38 F.4th 581, 586 (7th Cir. 2022); *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1134 (6th Cir. 2016).  *See also Head*, 489 A.2d at 451 n.4 ("28 U.S.C. § 2255 is 'nearly identical and functionally equivalent' to D.C. Code § 23-110, and we may rely on federal court interpretations of [Section] 2255 in construing [Section] 23-110." (quoting *Streater v. United States*, 429 A.2d 173, 174 (D.C. 1980))).

challenge to the evidence as a whole under the but-for *Fleming* standard. To preserve the issue of prejudice, assertions need only be made with "reasonable specificity"—parties are "not limited to the precise arguments made below." *Comford v. United States*, 947 A.2d 1181, 1186 (D.C. 2008) (internal quotation marks omitted). *See also Brown v. United States*, 881 A.2d 586, 593 (D.C. 2005) (requiring for preservation a party to object and provide specific enough grounds with the objection to direct the trial court's attention to the correct rule of law). Accordingly, we will not review Parker's appeal within the confines of plain error.

### III. Discussion

We now turn to the merits of Parker's appeal. Parker contends that he suffered prejudice because the evidence presented at trial that could have supported a but-for causation was critically flawed, and thus there is a reasonable probability that the jury would have found no more than that he was a participant in the battle, and would not have found him to be a but-for cause of Buckner's death. While the government acknowledges that there was instructional error, it nevertheless counters that Parker did not suffer any prejudice as there was evidence at trial of three distinct grounds to establish but-for causation.[6] First, the evidence at trial

---

[6] We emphasize that we take this case as it comes to us and confine our analysis to the arguments made by the government as to each of its three but-for

showed that Parker was the mastermind behind the gun battle. Second, the evidence at trial showed that Parker fired the first shot, initiating the gun battle. Third, the evidence at trial showed that Parker armed himself and lay in wait for the Avenue members in anticipation of the gun battle. We examine each separate action in turn and conclude that the flaws in each are sufficiently great to establish that there is a reasonable probability that the jury would have rejected each of them as proving but-for causation under *Fleming*.[7]

## A. Mastermind

At trial, Faison testified that Parker confided in him while they were incarcerated together and told him that he, along with Antonio "T.O." Fortson, had ordered three Circle members to draw out Avenue members into an ambush. At the time of the shooting, Faison was in prison on a separate charge, and thus his

---

grounds discussed *infra*. We thus limit ourselves accordingly and do not explore any other possible unraised issues or grounds which may or may not lurk in this appeal.

[7] Our forthcoming analysis should not be read to suggest that the government evidence was insufficient to obtain a conviction. No party makes such an argument, but to be clear, sufficiency presents a higher bar than what Parker faces to establish prejudice. *See Perez v. United States*, 968 A.2d 39, 99 (D.C. 2009) (finding prejudice despite agreeing that the evidence presented at trial was "without a doubt sufficient for a conviction"). In light of the deficiencies outlined below, we hold there was a reasonable probability that had the jury been properly instructed, they would not have found but-for causation.

only basis of knowledge for his testimony was Parker's alleged statements. Faison was the government's only witness to this alleged action, although it claims that his testimony was somewhat corroborated by Jovan "Jo Jo" Clay, a Circle member, who testified that three members of the Circle ran back from the Avenue after he heard gunshots, and Rajah's testimony that she saw Parker retrieve a firearm and push people inside their homes after the gunshots were heard, but before the shooting in the Circle began. The argument is that Parker thus started the entire battle, and his order was a but-for cause of the shootout.

However, there was significant evidence offered at trial that rebutted the mastermind argument. Clay, who was a member of the "Brick Squad," a higher ranking group within the Circle, testified that he was unaware of any plan or meeting to kill Avenue members on May 30. Additionally, there was evidence that Parker was only tangentially involved in the Circle gang, was not a member of the Brick Squad, and thus could not have been a leader with authority to give an order. Parker did not live in the Benning Terrace neighborhood at the time, and while he had a reputation for occasionally selling weed and had access to firearms, he did not routinely hang out with Circle members other than Buckner. While his retrieval of a firearm and subsequent action was consistent with the mastermind argument, it was equally consistent with the defense's assertion that he heard the shots, recognized them as an impending threat, and acted accordingly.

Moreover, and most importantly, Faison, the only witness to testify to the meeting itself, was heavily impeached on cross-examination. While Faison was initially one of the defendants, mid-way through trial he flipped on his codefendants in exchange for reduced charges. During his testimony he admitted to trying to intimidate witnesses to stop them from testifying against him, and he admitted that he would have been willing to murder one of the witnesses, Angelo Wages, to prevent Wages from testifying against him. Additionally, while he was in lock-up, Faison confessed to someone that if the trial didn't "look good for him, he's going to lie on the rest of his co-defendants, because he don't feel like doing time by his-self." Notably, because he was initially a codefendant, despite the rule on witnesses, he had the opportunity to hear the entirety of the government's case before he testified. Faison was so thoroughly impeached that following his testimony, the trial court remarked to the attorneys that he'd be "astounded" if the jury found him credible.

Lastly, there is evidence within the record to suggest that the jury in fact rejected the government's mastermind argument. While Parker was convicted of voluntary manslaughter while armed, he was acquitted on conspiracy to commit murder. The government contends that the conspiracy charge was related to a broader scheme of gang violence, and thus has no bearing on the narrower mastermind argument. However, it strikes us as implausible that the jury believed

Parker conspired with numerous Circle members to draw out Avenue members into a kill box but nevertheless acquitted him on conspiracy to commit murder.[8]

We therefore conclude that there is a reasonable probability that had the jurors been properly instructed, they would not have found but-for causation on the ground that Parker was the mastermind of the Avenue attack.

## B. First Shooter

The government also points to testimony from two witnesses that identified Parker as the first shooter on May 30 as evidence that he was a but-for cause of the battle. Rajah testified that she saw Parker from her balcony, and that once several Avenue members were within sight, Parker was the first person she recalled firing

---

[8] Parker presented a fallback argument that even if the jury found him to have participated in planning the Avenue attack, that participation could not support a but-for finding because Fortson was the master planner. In response, the government cited *Fleming*'s express advice that a defendant who aids and abets a homicide on an urban-gun-battle theory need not personally be a but-for cause of the death. *Fleming*, 224 A.3d at 222-23. But as we have shown, there is a reasonable probability that the jury would have rejected any role whatever by Parker in such planning. In any event, on the direct appeal in this case, the government asserted that it was charging Parker only as a principal, not as an aider and abettor, and we found that the giving of the challenged instruction on aiding and abetting, even if erroneous, was harmless. *See McCray*, 133 A.3d at 227. Thus, the government would be faced with the apparent bar of judicial estoppel. *See Ward v. Wells Fargo Bank*, 89 A.3d 115, 126-27 (D.C. 2014). Since the government does not otherwise press any aiding and abetting issue, nor do we. *See supra* note 6.

that day. Faison corroborated Rajah's account, testifying that Parker had told him that he had started shooting the moment he saw one Avenue member, Spriggs, come over the hill. According to the government, this was determinative evidence that Parker was the first shooter.

However, this evidence has significant flaws. First, Rajah's testimony was somewhat inconsistent regarding Parker's involvement. She was impeached on cross-examination for making inconsistent statements to officers on the scene and in her grand jury testimony with respect to whether Parker had continued shooting after his firearm jammed, and she initially did not tell the responding officers that Parker was on the scene at all. Even when she finally acknowledged Parker's involvement, she initially described him as wearing all black, but later when speaking with prosecutors she changed her description to a white shirt and black pants.

Second, Rajah's testimony was contested by other government witnesses. Linwood Hopkins, a neighbor who was standing right next to Rajah on the same balcony, identified someone from the Avenue as the first shooter. Another government witness, Wages, testified that the shooting happened all at once; "I mean, you heard multiple shots. There was no first shot. . . . I entered the building and that's when the multiple shots were fired." A third government witness, Clay,

further called into doubt the first shooter theory as he repeatedly insisted that it was Avenue members who began shooting the second they came over the hill. While Faison corroborated Rajah's account, as he was not at the scene of the crime and had near insurmountable credibility concerns, we cannot say confidently that this would alleviate the other shortcomings in the government's account. Moreover, Faison had heard the entirety of Rajah's testimony before he provided his own, and had threatened to "lie on the rest of his co-defendants." His corroboration inspires minimal confidence, if any.

We must again conclude that there is a reasonable probability that had the jury been properly instructed, they would not have found but-for causation on the ground that Parker was the first shooter.

## C.  Lying in Wait

The government asserted in its brief that even if Parker was neither the mastermind nor the first shooter, he still could have been a but-for cause of the shooting because he armed himself and "lay in wait" for the battle to begin. But we fail to see how mere preparation for battle can be the distinguishing and singular factor in this case that, absent mastermind and first shot, could impose particular "but for" liability on Parker under *Fleming*.  Indeed, we there noted as an example:

> [T]he jury could have found that Mr. Fleming was armed and prepared to engage in a gun battle, that he did engage in a gun battle, that death was reasonably foreseeable, and that Mr. Fleming did not act in self-defense. The jury could also have found that Mr. Fleming's firing of his gun was a substantial factor in Michael Jones's death. . . . But the jury could not on those conclusions reasonably find beyond a reasonable doubt that Mr. Fleming's firing of the gun was by itself a but-for cause of Michael Jones's death.

224 A.3d at 223.

The government itself seemed to recognize the shortcomings of its argument that Parker was a but-for cause of Buckner's death because he armed himself and lay in wait for the gun battle. At oral argument,[9] the government explained that Parker was "lying in wait, standing there, with a gun, pointing it at [Avenue members]," and thus he initiated a shooting similar to an example we described in *Fleming*. *See* 224 A.3d at 226 (explaining that causation will be satisfied if "the defendant, acting with an intent to kill . . . brandish[es] a gun at another person . . . [that] foreseeably cause[s] the intended target or another person to fire shots in response"). The government further clarified that by lying in wait, they actually meant that Parker had *initiated* the battle by brandishing his firearm and provoking Avenue members to return fire. The government conceded that it

---

[9] The government briefly made the same point toward the conclusion of its brief.

"[did]n't know what lying in wait" would even mean "in and of itself."  Rather, it argued that brandishing as a means of provocation can satisfy but-for causation, explaining that, as a matter of common sense, "[i]f I stand there, and point a gun at you, and you fire back, and our gunfire somehow kills a third party, I'm a but-for cause. . . .  [T]hat is so provocative[,] that I have caused the gunfire."

With that understanding, the government would have needed to prove that Parker brandished his firearm and provoked Avenue members into returning fire. But there was no evidence offered at trial that suggested the shooting began because Parker brandished his firearm.  Rajah, who testified that she witnessed Parker arm himself prior to the shooting and recalled him being the first shooter, did not testify that he brandished the firearm.  In fact, she admitted that she never even saw him with a gun: she saw him with a rag over his hands and only assumed he was armed after she saw a muzzle flash and heard the shot.  At no point did Rajah even suggest that Parker, while waiting, was pointing his firearm in the direction of the anticipated Avenue members.  This evidence, even disregarding issues surrounding Rajah's credibility, fails to prove that Parker brandished the firearm and provoked Avenue members into shooting.  Accordingly, the government's final theory strikes us as purely speculative, and we hold that there is a reasonable probability that had the jury been properly instructed, they would not have found but-for causation on a lying in wait theory.

## IV. Conclusion

None of this is to say that the evidence was insufficient to convict Parker of voluntary manslaughter if the jury had been properly instructed on but-for causation. Obviously, the jury did find elements of the government's case strong enough to convict him as a "substantial factor" in Buckner's death during the gun battle. But, as we held in *Fleming,* this "less stringent" test "is not remotely equivalent to a requirement of but-for causation." 224 A.3d at 223. Instructional error on a key element of an offense is no small matter. Given the error, for the reasons set forth above, we must conclude that there is a reasonably probability that this jury, if properly instructed, would not have found Parker to be a "but for" cause of Bruckner's death. In so doing, we take note that even with the misinstruction, this was not a surefire case for the government. Parker was acquitted of second-degree murder and conspiracy to commit murder, and a mistrial was declared on conspiracy to commit assault. Parker has demonstrated that he suffered actual prejudice as a result of the instructional error. We hold that the trial court erred in denying his Section 23-110 motion as procedurally defaulted.

Accordingly, we vacate Parker's conviction for voluntary manslaughter while armed and the accompanying conviction of possession of a firearm during a

crime of violence and remand to the trial court for further proceedings consistent with this opinion.

*So ordered.*